# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46268

<table>
<tr><td>STATE OF IDAHO,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>   Plaintiff-Respondent,</td><td>)</td><td>Boise, January 2019 Term</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Opinion filed: February 1, 2019</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>RICHARD PAUL MEYERS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Karel A. Lehrman, Clerk</td></tr>
<tr><td>   Defendant-Appellant.</td><td>)</td><td></td></tr>
</table>

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben P. McGreevy argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Mark W. Olson argued.

_____

MOELLER, Justice

Richard Meyers appeals from a judgment of conviction for grand theft on the grounds that he was denied his Sixth Amendment right to self-representation. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Five days after his release from prison on an unrelated charge, Richard Meyers ("Meyers") was arrested for stealing a pickup truck. He was subsequently charged with felony grand theft, in violation of Idaho Code sections 18-2403(1), 18-2407(1)(b) and 18-2409, and assigned a public defender. With the assistance of his appointed counsel, Meyers pleaded not guilty and waived his right to a jury trial.

Two months later, dissatisfied with his assigned counsel's performance, Meyers filed a motion for a "change of an attorney" with the district court. A hearing on this motion was held, wherein the district court inquired about Meyers's problems with his attorney and questioned his counsel regarding trial preparation. After observing the court's colloquy with his counsel,

1

Meyers withdrew his motion, indicating that he wanted to give his attorney "a chance," and that he could work with his counsel.[1]

On the day set for trial, Meyers's counsel expressed concerns about his client's mental capacity. The district court questioned Meyers and ordered that Meyers undergo a competency evaluation. Although the evaluation report concluded that Meyers was competent to stand trial, the State believed that this conclusion was too tenuous and requested a second evaluation, which the court granted. The second evaluation concluded that Meyers was not competent to stand trial. Thus, the court ordered Meyers to undergo mental health treatment before proceeding.

After treatment, Meyers was deemed "fit to proceed" with trial, and his case was put back on the trial calendar. Throughout the competency hearings, Meyers repeatedly expressed dissatisfaction with the pace of the proceedings—at times directly addressing the court without the assistance or prior consent of his counsel. Consistent with this practice, when the court began proposing trial dates at the conclusion of the final competency hearing, Meyers spoke out, requesting that the court expedite the trial. The court responded that it was willing to set the trial for the week between Christmas and New Year's Day, but Meyers's counsel indicated that he was unavailable that week. Meyers requested that the court conduct the trial then and indicated that he would get a new public defender for the trial. Meyers's counsel indicated that this was not a possibility and the State expressed doubts about getting witnesses for the trial between the two holidays, so the court set the trial for January 25, 2017.

Later that day, Meyers sent a letter to the judge requesting that his one-day bench trial be set between Christmas and New Year's Day. Additionally, he informed the judge that he had fired his public defender, was "prepared to represent" himself, and would present his defense "as soon as is possible." In the letter, Meyers explained that "part of the reason" he was dismissing his assigned counsel was because postponing the trial would interfere with his transitional housing funding. He also discussed other objections he had previously raised about his counsel's performance. Meyers concluded the letter with the following sentence: "I choose to exercise the right to defend myself in this matter."

There are no indications in the letter that Meyers sent a copy to his public defender. The

---

[1] Meyers also sent several additional letters to the court on a variety of topics, including two letters requesting that the judge reduce his charge, a letter requesting that a competency hearing be cancelled and his case be put back on the trial calendar, a letter indicating his disagreement with the outcome of his trial, and a letter attached to his pro se notice of appeal detailing his problems communicating with his counsel. Like the letter at issue in the case, the court did not take up any of Meyers's letters that were not designated as a "motion."

letter is stamped "received" the day after the hearing, and there is an electronic stamp on the letter indicating that it was scanned into the Odyssey system, but the record is silent as to what occurred after the district court received this letter. The letter was not written in the form of a motion for the appointment of new counsel; rather, it merely advised the court of Meyers's decision to "fire" his attorney of record and represent himself. Meyers did not submit a request for a hearing or attempt to schedule one. Nothing in the record suggests that the court ever saw the letter, or was made aware of its contents, prior to trial.

The bench trial occurred, as previously scheduled, on January 25, 2017. At trial, Meyers was represented by new counsel from the public defender's office. Before the trial began, the court confirmed that Meyers wished to proceed without a jury and asked if there were any other matters that needed to be addressed before the trial began. Meyers, through his new attorney, confirmed his decision to proceed with a bench trial. Meyers's counsel requested that Meyers's restraints be partially removed to free his hand so he could communicate with his counsel, but he did not raise any other issues at that time. During the trial, Meyers cooperated with his new attorney and eventually, with his attorney conducting the direct examination, testified on his own behalf. His attorney handled all aspects of the trial, and at no point during the trial did Meyers or his counsel mention his earlier request to represent himself. At the conclusion of the trial, the district court found Meyers guilty of grand theft. Thereafter, Meyers was sentenced to a unified term of seven years, with two years fixed.

Meyers appealed, arguing that his Sixth Amendment right to self-representation was violated by the district court's failure to discuss his letter, which contained the assertion of his right to self-representation. His appeal was first heard by the Idaho Court of Appeals. In an unpublished decision, it affirmed Meyers's conviction and sentence, holding that although Meyers clearly and unequivocally invoked his right to self-representation, he abandoned the invocation of that right by subsequent conduct. Because this case presents a constitutional issue of first impression in Idaho, this Court granted a Petition for Review.

## II.    STANDARD OF REVIEW

"While this Court gives serious consideration to the views of the Court of Appeals when considering a case on review from that court, this Court reviews the district court's decisions directly." *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). Constitutional issues,

3

such as a defendant's right to self-representation, are "pure questions of law over which this Court exercises free review." *Id.*

### III.    ANALYSIS

Meyers argues that the district court violated his right to self-representation as guaranteed by the Sixth Amendment to the U.S. Constitution by ignoring his request to represent himself. The State argues that Meyers did not unequivocally invoke his right to self-representation, and even if he did, he abandoned his request through his conduct.

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." Implicit in this protection is also the "right to proceed pro se when [the accused] voluntarily and intelligently elects to do so." *State v. Hoppe*, 139 Idaho 871, 874, 88 P.3d 690, 693 (2003) (citing *Faretta v. California*, 422 U.S. 806 (1975)). The reason a defendant has the right to defend himself is because it is he, "and not his lawyer or the State, [who] bear[s] the personal consequences of a conviction. . . . [a]nd although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Faretta*, 422 U.S. at 834 (internal quotations omitted). However, before a defendant waives his right to counsel and represents himself, the trial court has a duty to make the defendant "aware of the problems inherent in self-representation so that such waiver is knowingly and intelligently made." *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1002 (1980) (referencing *Argersinger v. Hamlin*, 407 U.S. 25 (1972)). Further, the request to proceed pro se must be clear, unequivocal, and timely. *State v. Lippert*, 145 Idaho 586, 597, 181 P.3d 512, 523 (Ct. App. 2007); *see also Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) ("[T]he request to proceed without counsel [must] be unequivocal"); *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) ("In order for a defendant to represent himself, he must 'knowingly and intelligently' forego counsel, and the request must be 'clear and unequivocal' ") (quoting *Faretta*, 422 U.S. at 835); *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982) ("The constitutional right of self-representation . . . must be timely asserted . . . [A] motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay."). "To qualify as unequivocal, 'a defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be

4

reasonably certain that the defendant wishes to represent himself.' " *U.S. v. Carpenter*, 680 F.3d 1101, 1102 (9th Cir. 2012) (quoting *U.S. v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994)).

Meyers argues that he clearly and unequivocally invoked his right to self-representation in his letter to the court. We agree. His letter contained several statements that plainly invoked his right to proceed pro se. His letter indicated that (1) he had "fired" his court-appointed counsel, (2) he "was prepared to defend [him]self in this matter", and (3) he would present his defense "as soon as is possible." Further, Meyers concluded his letter with a formal invocation of this right: "I choose to exercise the right to defend myself in this matter." Certainly, this communication to the court was a clear and unequivocal invocation of Myers's right to self-representation. Nevertheless, it was also an attempted ex parte communication with the trial judge—not a motion. What is less clear from the record is whether the judge ever viewed the letter.

Meyers argues that his constitutional right to self-representation was violated because there was no hearing addressing his request to proceed pro se, his request was never mentioned by the court, and he never abandoned his request. The State argues that Meyers abandoned his request to proceed pro se when he appeared with new counsel at the trial and failed to re-assert this request until after he was found guilty. Whether the presiding judge was aware—or should have been aware—of the request for self-representation is an issue we need not decide if Meyers abandoned his request. Based on the overwhelming evidence in the record, we agree with the State's position.

Not only must the Sixth Amendment right to self-representation be invoked unequivocally, the defendant's subsequent conduct must also indicate a continuing intention to proceed pro se. *Brown*, 665 F.2d at 611 ("Even if defendant requests to represent himself . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether."). Indeed, "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Id.*

Idaho has not yet adopted an approach for determining when the request for self-representation is abandoned or waived after it is invoked. Other jurisdictions have addressed this issue utilizing various approaches. For instance, in *People v. Kenner*, 272 Cal. Rptr. 551, 554–55 (Cal. Ct. App. 1990), the California court of appeals adopted a per se test wherein the defendant

5

was deemed to have abandoned or withdrawn his request for self-representation where he "had both time and opportunity to follow up on his request for a hearing on his *Faretta* motion, and failed to do so." Kentucky has adopted a similar approach. *Swan v. Kentucky*, 384 S.W.3d 77, 93–94 (2012) (holding that a defendant's failure to re-raise his *Faretta* motion to a new judge constituted abandonment of his request to proceed pro se or as co-counsel). In Arizona, courts have adopted a totality of the circumstances test to determine whether a defendant has abandoned his *Faretta* motion when the court "fails to consider and rule on the motion." *State v. McLemore*, 288 P.3d 775, 786 (2012). Under this test,

> [i]nformative factors include but are not limited to [1] a consideration of the defendant's opportunities to remind the court of a pending motion, [2] defense counsel's awareness of the motion, [3] any affirmative conduct by the defendant that would run counter to a desire for self-representation, [4] whether the defendant waited until after a conviction to complain about the court's failure to rule on his or her motion (thus indicating the defendant was gaming the system), and [5] the defendant's experience in the criminal justice system and with waiving counsel.

*Id.* As a matter of first impression, we are persuaded that a totality of the circumstances test best protects the constitutional rights of a defendant because it not only addresses the opportunities a defendant had to remind the trial court of a pending motion, but it also considers other relevant circumstances in the record. Accordingly, we adopt this approach.

Applying this test to the instant case, we conclude that Meyers abandoned his request to represent himself. First, Meyers had the opportunity to address or renew his motion before the trial began, when the court asked if there were any other matters to be taken up. Meyers, who appeared with newly appointed counsel, did not mention or renew his request to proceed pro se. His counsel conveyed Meyers's request that his hands be free during the trial to the court, offering concrete evidence to the court that an attorney/client relationship was in effect, yet Meyers and his counsel remained silent as to his request for self-representation. This response stands in stark contrast to many of Meyers's previous interactions with the court. In virtually all proceedings prior to trial, Meyers had been a vocal participant—he would often interrupt counsel or the court to address the court directly. Second, notwithstanding the repeated assertions that the trial court "ignored" Meyers's request to represent himself, there is no evidence in the record indicating that the court or counsel were even aware of Meyers's request to proceed pro se.

6

Meyers's letter to the court indicated that he had "fired" his prior counsel and notified counsel's supervisor of this fact, but there is no evidence in the record that his substitute counsel knew of Meyers's letter or his request to proceed pro se. Third, Meyers appeared at trial with *new* counsel, indicating that his issues with previous counsel were resolved by the assignment of substitute counsel by the public defender's office and that he acquiesced in the substitute counsel's representation. Additionally, the appearance of new counsel with Meyers on the date of trial was entirely consistent with his earlier oral request to have a different public defender represent him. Assuming, *arguendo*, that the trial court was aware of Myers's request, it could have reasonably inferred that Meyers had changed his mind about representing himself. Fourth, Meyers waited until after he was pronounced guilty by the court to renew his request for self-representation, indicating dissatisfaction with the result of the proceedings, rather than his representation at trial. Finally, the record establishes that although there were concerns about his competence, Meyers had several prior convictions and had been in state custody for fourteen years, thus indicating at least some familiarity with the criminal justice system. However, it is unclear whether he had ever represented himself in any of his prior cases.

Thus, the totality of the circumstances establish that while Meyers clearly invoked his right of self-representation in his letter to the court, he later abandoned this request and waived this right by his subsequent conduct. Meyers did not notify any other party of his request, nor did he remind the court of his request, though he had many opportunities. He appeared on January 25 with new counsel and acquiesced to such representation by permitting counsel to act on his behalf throughout the trial, strongly suggesting that his concerns with prior counsel had been resolved.

Notwithstanding this ruling, there are aspects of this case that are concerning to the Court. For example, the record is unclear as to (1) the trial judge's knowledge of Myers's letter, and (2) whether copies of the letter were provided to counsel. Because the record is silent as to these matters, and because these discrete issues were not raised by the parties on appeal, we do not comment on whether viewing the letter or failing to forward the letter would have been error. However, by way of providing guidance, we caution trial courts to adopt procedural protocols and safeguards that will ensure compliance with the provisions of the Idaho Judicial Canons, in

7

particular Rule 2.9(A) and (C),[2] regarding the handling of ex parte letters to the court. In a case such as this one, where the trial judge is also the trier of fact, it would behoove the court to avoid any exposure to ex parte information. This Court recognizes that a wide range of approaches have been taken by trial judges and court clerks across the state to deal with such matters in the past. Such procedures may need to be reviewed and updated in light of the judiciary's recent adoption of statewide business processes as part of its implementation of the Odyssey Case Management System.

## IV.  CONCLUSION

We hold that the district court did not violate Meyers's Sixth Amendment right to self-representation. Although Meyers clearly and unequivocally invoked his right to proceed pro se, the totality of the circumstances establish that he subsequently abandoned that right. Accordingly, the judgment of conviction is affirmed.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

---

[2] Rule 2.9(A) provides that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending matter, . . ." However, if the defendant's attempted communication concerns a request for the appointment of new counsel or an intention to represent himself, it would be an appropriate matter for a clerk to bring to the trial judge's attention. Additionally, the best practice under such circumstances is to follow the requirements of Idaho Judicial Canon, Rule 2.9(C):

> If a judge receives an unauthorized ex parte or other prohibited communication bearing upon the substance of a matter, the judge shall promptly make provision to notify the parties of the substance of the communication and provide the parties with an opportunity to respond. If the communication was in writing, the judge shall promptly provide a copy to the parties.