**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 52929**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
|    **Plaintiff-Respondent,** | ) | |
| | ) | **Boise, October 2025 Term** |
| **v.** | ) | |
| | ) | **Opinion Filed: November 25, 2025** |
| **BENJAMIN CHARLES KNIGHT,** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
|    **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Oneida County. Javier L. Gabiola, District Judge, and Stephen Dunn, Senior District Judge.

The judgment of conviction is <u>vacated</u> and the case is <u>remanded</u> for further proceedings.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Kimberly Coster argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Michael MacEgan argued.

_____

BRODY, Justice.

Benjamin Charles Knight appeals his judgment of conviction entered after a jury found him guilty of three counts of unlawful possession of a firearm. While responding to a reported disturbance at Knight's residence, officers learned that Knight was a convicted felon. They discovered three firearms in the home.

Throughout the criminal proceedings, Knight told the district court he could not afford an attorney and repeatedly requested "effective assistance of counsel." The district court encouraged Knight to apply for a public defender, and Knight responded that he did not want someone to represent him but wanted "effective assistance of counsel," which he asserted was his constitutional right. Knight appeared without counsel throughout the pretrial stages of the case and filed many pro se motions, including a motion to suppress that was denied following an evidentiary

1

hearing. Ultimately, shortly before trial, the district court appointed what it called "shadow counsel" to assist Knight during jury selection and at trial. Even after "shadow counsel" was appointed, the district court continued to refer to Knight as self-represented.

On appeal, Knight argues the district court violated his Sixth Amendment right to counsel because the district court did not determine whether he knowingly, intelligently, and voluntarily waived that right and exercised the right to represent himself at trial. Knight also challenges the district court's denial of his motion to suppress, arguing he was unlawfully seized when the officers responded to a report of a disturbance at his residence. For the reasons expressed below, we vacate the judgment of conviction and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, officers responded to a report of a disturbance at Knight's residence, where Knight and his girlfriend were having an argument. During the encounter, officers separated Knight from his girlfriend and questioned him outside of the home. When officers interviewed the girlfriend, she stated that Knight was a convicted felon in possession of at least three firearms. Knight admitted to knowledge of the firearms' presence inside his home, informing the officers that he purchased two of them for his children. Knight also led the officers through his home and to his bedroom, where they then recovered three firearms in the closet and some ammunition on top of the dresser. The State later charged Knight with three counts of unlawful possession of a firearm by a convicted felon.

Knight appeared without counsel for his initial appearance before the magistrate court in November. The magistrate court informed Knight that he likely did not qualify for a public defender because Knight was employed at the time. Knight requested and obtained a continuance of the preliminary hearing so that he could obtain his own private counsel.

The preliminary hearing was held in January 2020, and Knight again appeared without counsel. The magistrate court asked Knight if he was going to represent himself. Knight responded, "I stated the last two times that I want a counsel, but I can't afford one." The magistrate court again informed Knight that he likely would not qualify for a public defender, then proceeded with the preliminary hearing and bound Knight over to the district court on the charges.

Two different district judges became involved with Knight's case. Accordingly, where context calls for clarification, we refer to each judge by name. One week after the preliminary hearing, Knight appeared without counsel at his arraignment before the district court, with Senior

2

Judge Stephen Dunn presiding. Judge Dunn inquired about representation and Knight again stated that he could not afford an attorney and did not know what else to do because he was told he did not qualify for a public defender. Judge Dunn then proceeded to caution Knight about the skill required to represent himself in a criminal matter and advised Knight that because he would be held to the same standard as an attorney with regard to the rules of evidence, it would be better for Knight to be represented by an attorney experienced in criminal law. Knight responded that he was saving up for an attorney. Judge Dunn then stated that he would not delay the case to allow Knight to find an attorney, and he would proceed to trial with the understanding that Knight was accepting "whatever risks there are in representing [himself]." Knight responded, "there's nothing else I can do."

That same day, Knight filed a motion to dismiss the complaint and a request "for full finding of fact and conclusions of law." The motion was heard in February 2020 by Judge Gabiola. Knight again appeared without an attorney. Judge Gabiola noted the absence of counsel and remarked that Knight had "chosen apparently at this point not to" retain counsel despite the court's warning. Knight responded that he had "chosen to attempt to . . . obtain money for counsel." Knight explained that he was talking with an attorney in Utah and saving up money to hire him. Judge Gabiola then proceeded to address Knight's motion to dismiss and ultimately denied the motion. Immediately thereafter, Knight sought to address his lack of counsel with Judge Gabiola, and Judge Gabiola noted he had been trying to get Knight "to hire a lawyer" to help Knight understand "the legal mumbo jumbo." Knight responded, "I have been attempting to, and you've moved forward without it when I've asked you clearly last time about it." The district court then granted a two-month continuance to allow Knight to obtain counsel, emphasizing that the case would be set for trial if Knight came to the next proceeding without counsel.

In May 2020, Knight informed the district court, Judge Gabiola presiding, that he had been unable to retain legal counsel because he did not "have the money to buy one." Judge Gabiola suggested Knight apply for a public defender, and Knight explained he wanted to exercise his right to counsel, without being represented:

> [Judge Gabiola]:  All right. So what I need to have you do and what I'm going to request that you do is make application for a public defendant -- or public defender, excuse me, to represent you in this case,
>
> [Knight]:  I don't want someone to represent me. I need legal counsel that can help me file my paperworks, help me do my motions. I don't want somebody that can do whatever they want that's an officer of the [c]ourt. I would like to be in

3

control, and I need somebody to file my paperwork to tell me what -- how to do it right so that I'm not getting stepped on. That's all I -- I need legal counsel, because that's what I have the right to. I don't have a right to an attorney. I have a right to a legal counsel, and that's what I'm -- that's what I'm seeking.

[Judge Gabiola]:  Okay. Well, you do have a right to an attorney. You do have a right to counsel. And so I understand what you're stating. You want to have legal counsel assist you.

[Knight]:  Yes.

[Judge Gabiola]: But in order for you to do that, you need to apply for a public defender. So what I'm going to order is that an application be sent to you. . . .

. . . .

. . . You're going to fill out that application and submit that. And I want to have a public defender appointed for you. Okay?

[Knight]: I -- I would like to talk to him before he does anything on my behalf.

[Judge Gabiola]: And that's correct. You will have the opportunity to do that.

When Knight appeared without an attorney at the next hearing, in August 2020, Judge Gabiola noted he was "appearing as a self-represented litigant." Knight objected, stating he was not "representing anyone or anything." Judge Gabiola then inquired into why an attorney had not been appointed for Knight and a confusing exchange occurred where Knight expressed a desire to have "assistance of counsel" but not an "attorney." He rejected the district court's assertion that he was representing himself:

[Knight]: Because I'm not going to be signing anything over, and I don't need to give your corporation any information about me. I don't want to be represented by anything or anyone. I need assistance of counsel. I don't need somebody that can just steamroll me for the courts, because I don't want to be a ward of the court.

[Judge Gabiola]: Okay. So you're saying that you are refusing to retain an attorney and represent yourself. Is that correct?

[Knight]: No, that is not correct.

[Judge Gabiola]: Well, who else is going to be representing you, Mr. Knight, if it's not you?

[Knight]: I don't represent anything. I am me.

. . . .

I want assistance of counsel. I don't want anybody that can do whatever they want for me, no. I have the right to assistance of counsel, not the assistance of

4

an attorney. I don't need to be represented by anybody. I don't want anyone to be able to do anything for me. I want assistance of counsel, not an attorney. And I don't want to sign a contract and give them the rights to anything for any reason, because they're the ones that need to sign a contract with me if they're going to be helping me. And they're going to be my assistance of counsel.

Judge Gabiola then explained that if Knight was asking for assistance of counsel, that assistance would have to be provided by an attorney either hired by Knight or appointed for him by the court after applying for a public defender.

Knight subsequently filed a pro se motion to suppress all evidence obtained from his home in July 2019. He argued that he was arrested in violation of the Fourth Amendment when officers responded to the disturbance because he did not feel free to leave and "was scared to not let [them]" into his home. Accordingly, Knight contended all evidence should be suppressed as fruit of the poisonous tree. Knight also stated, "I still can not afford assistance and do not want to get attorney[.]"

The district court held an evidentiary hearing on the motion in January 2021, during which Knight appeared without counsel and cross-examined the officers and argued the motion himself. After the hearing, the district court denied the motion, holding that Knight had failed to prove that he was seized and an arrest had occurred because the evidence was "devoid of any indication that [the officer's] conduct was coercive."

In April 2021, Knight appeared at a pretrial conference held before Judge Dunn, who was filling in for Judge Gabiola. Knight asserted that he believed the court was acting under the misunderstanding that he had rejected his right to counsel, again emphasizing that he wanted "assistance of counsel" but did not want to be represented. Judge Dunn then discussed with Knight the possibility of appointing what Judge Dunn referred to as "shadow counsel":

> [Judge Dunn]: So you want shadow counsel. But you've never asked for that. In any of the motions I've seen, you've never asked for shadow counsel.

> [Knight]: I -- I want effective assistance of counsel, not representation. There's -- I mean, I want somebody that can help me out with the procedures, but I don't want someone else being able to call the shots on everything that's done. I want positive, good input. That's all I wanted.

> [Judge Dunn]: So what you're saying -- we call that shadow counsel.

> [Knight]: I didn't even know there was such a thing.

> [Judge Dunn]: Sometimes -- sometimes we appoint an attorney to give advice, provide assistance as necessary, counsel with the defendant, but not speak in the proceedings. That's -- and then the defendant does his own cross examination

of witnesses or whatever. It's not an ideal situation. I've seen it in court. It's not ideal. Be that as it may, you've never asked for it. You've never once asked for that.

[Knight]: I have stated I want effective assistance of counsel. I haven't been working in the last year due to COVID. I don't have the funds to go out and get somebody that can do that. I don't have the money to just hand over for that. That's all I've ever been offered with the [c]ourt.

[Judge Dunn]: But you've been asked several times by Judge Gabiola to apply for a public defender. Then if you had applied for a public defender and you qualified for one and one was appointed, then an arrangement could be made as to what the nature of representation or assistance would have been. But you never applied for a public defender anyway.

[Knight]: I'd never even heard --

[Judge Dunn]: You can't afford one, so I'm on the horns of a dilemma, and so would Judge Gabiola be. You want effective assistance, but you're not asking for it. You need to apply for a public defender if you want an attorney in any way, shape, or form. You see what I'm saying? You understand that?

[Knight]: That -- a public defender was a -- they were offering to have somebody represent me. From my understanding, they were -- wanted someone to represent me.

[Judge Dunn]: I understand what you're --

[Knight]: I want assistance, not representation.

[Judge Dunn]: Okay.

[Knight]: And that's what the difference was, and that's why there's no -- I felt there was no reason to apply for representation when that's not what I wanted.

[Judge Dunn]: Well here's the deal. Let me be clear about something. You don't -- if you want to pay for an attorney, you can pay for an attorney and get him to do whatever it is you want him to do for you. That's up to you. And you're telling me you can't afford that. And so the only other option there is in the system -- the state is not going to pay, the county is not going to pay for you to go out and hire a private attorney and pay them whatever they charge to provide what kind of specialized assistance you may want. That's not going to happen. That never happens.

But if you want a public defender even to be shadow counsel or to provide some assistance but not represent you, you must apply for it. You can apply for a public defender. If you qualify, one can be appointed. Then a discussion can be held as to what role that attorney is going to play in assisting you in your case. But it can't be done unless you apply.

And that's -- I saw several places where Judge Gabiola was trying to encourage you to apply for a public defender. But even if you -- even if you had done that and you said, "But I don't want him to speak for me," you could have

6

brought that up an arrangement could be made. But you've never even made the effort. That's my concern.

[Knight]: I'll see what I can do.

[Judge Dunn]: Okay. And I'll tell you this. I don't know how -- I'm not going to speak for Judge Gabiola. I don't know how favorably he will respond now if you apply for a public defender at this point when we're trying to . . . get[] this case tried. I don't know how that's all going to work, but I'm glad he has to deal with that mess and I don't have to.

So that's the deal. If you want to apply for a [public defender] and get somebody to assist you in some kind of shadow way, you have to apply. . . . I'm telling [Judge Gabiola] -- I'm going to put in here you want counsel to assist you but not represent you, and I told you that you could not even have that in this case unless you applied for a public defender. Are we clear about that? Do you understand?

[Knight]: That I --

[Judge Dunn]: Do you understand what I just said? You get what I'm saying?

[Knight]: You want me to apply.

[Judge Dunn]: If you want -- if you want an attorney . . . to assist you in any way, you have to apply. That's what I'm saying.

[Knight]: I'll apply.

Knight subsequently submitted an application for a public defender to the district court. In June 2021, at a pretrial conference before Judge Gabiola, the district court accepted Knight's application and appointed "shadow counsel." Knight then clarified his understanding that the attorney was appointed as "shadow counsel," to which the district court responded, "If that's how you want him to assist you, that's within your right, and I'm happy to accommodate you if that's what you want to do."

Knight's case proceeded to a jury trial in April 2022. On the morning of the first day of trial, before jury selection began, Knight informed the court that shadow counsel had been of "no assistance" to him because counsel did not timely file his witness or exhibit lists. The district court responded by reminding Knight he was self-represented. Knight responded that he was "[n]ot representing anybody" and he had the "right to effective assistance of counsel." The district court proceeded to discuss jury instructions and the State's motion to amend the Information with the parties, with Knight taking an active role in speaking with the court and the prosecuting attorney.

7

The district court then treated Knight's comments regarding his lack of preparedness for trial as a motion for a continuance and ultimately denied the motion. Jury selection began immediately following the district court's denial of Knight's motion to continue. The district court informed the jury panel that Knight was "defending and representing himself with the assistance of [an] Oneida County public defender[.]" The State also questioned prospective jurors about their perception of a self-represented defendant, informing them that Knight was a pro se litigant who had been appointed a public defender to serve as "shadow counsel" to provide Knight with "as much assistance or as little assistance . . . as he wants."

During trial, Knight presented his own arguments to the jury, cross-examined the State's witnesses, raised his own objections, and questioned his sole defense witness. The public defender's participation was limited to the following: re-explaining some of the district court's statements to Knight; showing Knight a copy of the State's exhibits on the public defender's laptop; clarifying some of Knight's concerns regarding jury instructions to the district court; clarifying the scope of Knight's sole witness's testimony; and, at Knight's request, orally presenting Knight's motion to dismiss to the district court after completion of the State's case-in-chief.

Knight was convicted by the jury on all three counts of unlawful possession of a firearm. Thereafter, he filed pro se motions to dismiss and for a new trial, in which he argued that he was "without effective . . . assistance of counsel." As a result of Knight's ineffective assistance of counsel claim, the public defender sought to withdraw but reminded the district court, "I'm not his counsel." At a later hearing in June 2022, the district court, with Judge Gabiola presiding, acknowledged Knight's complaints regarding the ineffective assistance of the public defender, allowed the public defender to withdraw, and agreed to appoint new "shadow counsel" to assist Knight with his motions to dismiss and for a new trial, and at sentencing. In discussing the appointment of new "shadow counsel," the district court reiterated its understanding that Knight was still representing himself, and that new shadow counsel would assist Knight by providing "as much or as little help" as Knight asked for.

At this point in the June 2022 hearing, the public defender who had previously been appointed to assist Knight at trial sought to clarify the scope of new "shadow counsel's" assistance, emphasizing the possibility of prior misconceptions:

[Public Defender]: . . . [J]ust for the benefit of communication, Mr. Knight just asked that shadow counsel would be for as much or as little assistance as he requests. My understanding of shadow counsel in this is that they're there for counsel and advice. And I'm not exactly sure when Mr. Knight says "as much or as little assistance as I request" exactly what he's referring to. I don't want him to have any misconceptions, just for his own benefit, because there -- I'm not sure if there were misconceptions before.

[Knight]: I can clarify.

. . . .

The [c]ourt told me shadow counsel would be as much or as little help as I've wanted. I've asked for motions to be filed. They're not on the record. I've given him witnesses. They're not on the record. If I ask him to do something and he agrees to do it, he's going to do what he agrees to do. Is that correct?

[Judge Gabiola]: . . . So to clarify, that's what I was getting at a moment ago, Mr. Knight. You understand you are your attorney. Okay? So you're the one that has to file the motions. Not your shadow counsel. All right? It's you. You are your own attorney. You can ask legal questions of shadow counsel and say, "Okay, is this a rule I should cite to," for example. But your shadow counsel does not file things for you, because you are your own attorney. All right? Is that clear?

[Knight]: I was told as much or as little, and if he says he's going to do something, he's going to be stuck -- held to that, doing that. Right?

[Judge Gabiola]: Well --

. . . .

What I'm telling you Mr. Knight, is that you are your attorney. Okay? So you can visit with your shadow counsel and ask your shadow counsel, you know, "What's the law say on this? Can you help me with preparing any motions or other pleadings to file with the [c]ourt?" But ultimately that's up to you to do, not your shadow counsel.

. . . .

. . . What I'm telling you is your shadow counsel is there to assist you, and only to assist you in making sure if there's a law, a statute, a rule, case law, whatever it may be, to help you in crafting or -- your submission to the [c]ourt. All right? Your shadow counsel's not required to file things for you.

[Knight]: But if I ask him to review the motion, like that he has in front of him, I mean, a shadow counsel should technically review it to verify it . . . . Because I have asked [shadow counsel] if he wanted to go over my motion before it was filed, and he said he doesn't need to.

[Judge Gabiola]: Well, that's correct because he's not your attorney.

[Knight]: Well, how is he going to be any assistance if that's not -- it doesn't happen?

[Judge Gabiola]: Well, this is what I'm telling you again, all right? Your shadow attorney is just assisting you. Ultimately it's up to you, Mr. Knight, as to what you file with the [c]ourt. It's not up to your shadow counsel. Okay?

[Knight]: That's been clarified, and I'm going to let the [c]ourt know that there has been -- there was a misunderstanding, because the [c]ourt did tell me that he would be as much or as little help as I wanted, and . . . that's what I understood, but now --

[Judge Gabiola]: I'm clarifying that comment, because I wanted to make sure . . . just for the record that that's the case.

The district court subsequently denied Knight's motions to dismiss and for a new trial, stating, *inter alia*, that a claim for ineffective assistance of counsel may be brought in a post-conviction proceeding. The district court imposed three concurrent sentences of five years each, with the first three years fixed, but suspended the sentences and placed Knight on probation for three years. Knight timely appealed. After the Idaho Court of Appeals affirmed Knight's convictions, we granted his petition for review.

## II.    STANDARDS OF REVIEW

"When addressing a petition for review, this Court will give 'serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court.'" *Rodriquez v. State*, 171 Idaho 634, 641, 524 P.3d 913, 920 (2023) (quoting *Marr v. State*, 163 Idaho 33, 36, 408 P.3d 31, 34 (2017)).

When the appellant asserts a violation of his Sixth Amendment right to counsel, this Court will "review the record independently to determine if this constitutional right has been abridged." *State v. Pratt*, 125 Idaho 546, 555, 873 P.2d 800, 809 (1993) (citation omitted).

When reviewing a district court's decision on a motion to suppress, this Court ordinarily applies a bifurcated standard. *State v. Maahs*, 171 Idaho 738, 744, 525 P.3d 1131, 1137 (2023). "When a decision on a motion to suppress is challenged, the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *Id.* (quoting *State v. Phipps*, 166 Idaho 1, 4, 454 P.3d 1084, 1087 (2019)).

## III.    ANALYSIS

Knight contends his Sixth Amendment right to counsel was violated because the district court "made no effort to determine whether [he] was knowingly, intelligently, and voluntarily waiving his right to counsel and exercising his right to represent himself at trial[.]" Knight argues

10

the record reflects he never intended to waive his right to counsel because he consistently and repeatedly stated he wanted "effective assistance of counsel." He maintains the assistance he received from the public defender did not constitute representation under the Sixth Amendment because the district court specifically stated Knight "would be representing himself at trial, as a pro se litigant" and treated him as such. In response, the State argues the public defender's assistance at trial satisfied the requirements of the Sixth Amendment; thus, no waiver was required. In other words, the State argues Knight *was* represented. We agree with Knight that the record reflects he was self-represented and, notwithstanding the many hearings on the subject, the record does not reflect that he ever knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel. The judgment of conviction must be vacated and the case remanded for further proceedings.

A.     **The district court's appointment of "shadow counsel" did not satisfy Knight's Sixth Amendment's right to counsel because "shadow counsel" did not control or manage Knight's defense.**

Under the Sixth Amendment to the United States Constitution, a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

> The right to be represented by counsel and to have counsel appointed for an indigent defendant is recognized by decisions of the United States Supreme Court, which hold that the provisions of the Sixth Amendment to the Constitution of the United States guaranteeing to an accused the right to assistance of counsel in both capital and non-capital criminal prosecution are applicable not only in federal prosecutions but also in state prosecutions by reason of the Fourteenth Amendment of the Constitution of the United States.

*Pharris v. State*, 91 Idaho 456, 458, 424 P.2d 390, 392 (1967) (first citing *Gideon v. Wainright*, 372 U.S. 335 (1963); and then citing *Powell v. Alabama*, 287 U.S. 45 (1932)).

"[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989). Thus, the Sixth Amendment right to counsel is the right to representation by an attorney. *Pharris*, 91 Idaho at 458, 424 P.2d at 392. When a defendant chooses to be represented by counsel, "law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas." *Faretta v. California*, 422 U.S. 806, 820 (1975). "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what

11

agreements to conclude regarding the admission of evidence.'" *McCoy v. Louisiana*, 584 U.S. 414, 422 (2019) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008)). "Some decisions, however, are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. For this reason, a court may "appoint 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n.46. "If standby counsel's participation . . . effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance," then standby counsel's participation has effectively crossed over to representation. *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984) (emphasis omitted). Accordingly, the test for determining whether a defendant was represented at trial is to evaluate who controlled, managed, and presented the defense.

Here, the record demonstrates that *Knight* controlled and managed his own defense. Both the prosecuting attorney and the district court repeatedly referred to Knight as pro-se or self-represented throughout the trial proceedings and in front of the jury. The public defender assigned to assist Knight specifically stated he was *not* Knight's counsel when Knight raised concerns regarding his effectiveness. Critically, in terms of how the defense was actually conducted, it was Knight who spoke to the court on all matters of importance. While the public defender orally presented Knight's motion to dismiss at the conclusion of the State's case-in-chief, the public defender did so at Knight's request, restating what Knight had told him to say. The public defender did not file any motions; Knight did so unassisted. The public defender did not question the witnesses at trial, Knight did. Thus, the public defender did not control or manage the defense; at best, he merely assisted Knight at various points upon Knight's request. Accordingly, the record is clear that Knight was not represented, and any assistance by the public defender did not meet the requirements of the Sixth Amendment's right to counsel.

**B.**   **Knight did not knowingly, intelligently, or voluntarily waive his right to appointed counsel.**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel for his defense. "Implicit in this protection is also the 'right to proceed pro se when [the accused] voluntarily and intelligently elects to do so.'" *State v. Meyers*, 164 Idaho 620, 623, 434 P.3d 224, 227 (2019) (alteration in original) (quoting *State v. Hoppe*, 139 Idaho 871, 874, 88 P.3d 690, 693 (2003); *see also Faretta*, 422 U.S. 806. "However, before the defendant waives his right to counsel and represents himself, the trial court has a duty to make the defendant 'aware of the problems inherent in self-representation so that such waiver is knowingly and intelligently made.'" *Id.* (quoting *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980)); *see also Faretta*, 422 U.S. at 835. Moreover, the defendant must explicitly invoke his right to self-representation, and "the request to proceed pro se must be clear, unequivocal, and timely." *Meyers*, 164 Idaho at 623–24, 434 P.3d at 227–28.

"To qualify as unequivocal, 'a defendant must make an *explicit choice* between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" *Id.* at 623, 434 P.3d at 227 (emphasis added) (quoting *United States v. Carpenter*, 680 F.3d 1101, 1102 (9th Cir. 2012)). "To be valid, a waiver of the right to counsel must have been effected knowingly, voluntarily, and intelligently." *State v. Dalrymple*, 144 Idaho 628, 633, 167 P.3d. 765, 770 (2007) (quoting *State v. Lovelace*, 140 Idaho 53, 64, 90 P.3d 278, 289 (2003)). "This Court will 'examine the totality of the circumstances in determining whether . . . [a] waiver is valid.'" *Id.* (alterations in original) (quoting *Lovelace*, 140 Idaho at 64, 90 P.3d at 289). However, the State bears the burden of proving that the defendant knowingly, intelligently, and voluntarily waived his right to counsel. *Id.*

There is a strong presumption against waiver of fundamental constitutional rights, including the Sixth Amendment's right to counsel:

> "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescene [sic] in the loss of fundamental rights.'"

> "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and

it would be fitting and appropriate for that determination to appear upon the record."

*Carnley v. Cochran*, 369 U.S. 506, 515–16 (1962) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)). For this reason, the law imposes a serious duty on the trial judge to ensure the defendant has validly waived his right to counsel. *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948). "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Id.* at 723–24 (footnote omitted).

This case comes to us in an unusual posture because the district court never made a finding that Knight knowingly, intelligently, and voluntarily waived his right to counsel. Nevertheless, the district court operated as though Knight had waived his right to counsel. After warning Knight against the dangers of self-representation at a pretrial hearing in January 2020, Knight stated he could not afford an attorney but was trying to save up money for one. Judge Dunn then responded by stating that the court would proceed with Knight accepting "whatever risks there are" in representing himself. From that point on, Judge Gabiola referred to Knight as self-represented in all subsequent pre-trial proceedings and at trial. Thus, it would appear the district court inferred that Knight had made a valid waiver of his Sixth Amendment right to counsel without making any findings to that effect on the record. We do not agree that the record evinces any evidence of such a waiver.

Importantly, Knight did not agree to represent himself at any point. Rather, when asked if he was refusing to retain an attorney and representing himself, he specifically responded, "No, that is not correct" and repeatedly asked for "effective assistance of counsel." These statements are not consistent with a waiver of the right to counsel, even when viewed in light of Knight's additional statements that he did not want representation or "someone else being able to call the shots on everything that's done." Rather, they demonstrate a significant degree of confusion regarding what the Sixth Amendment right to counsel entails. Thus, any waiver would not have been knowing or intelligent.

Although the Sixth Amendment's right to counsel includes "the right to the effective assistance of counsel[,]" the phrase "effective assistance of counsel" is typically understood as the standard by which a court adjudges whether an attorney's representation of a defendant was constitutionally adequate. *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Again, the Sixth Amendment right to "assistance of

14

counsel" means representation by an attorney. *See Pharris v. State*, 91 Idaho 456, 458, 424 P.2d 390, 392 (1967); *supra* at 11. The Sixth Amendment does not provide a right to "shadow counsel" who does as little or as much as the defendant wishes. *See Faretta*, 422 U.S. at 834 n.46; *State v. Averett*, 142 Idaho 879, 886, 136 P.3d 350, 357 (Ct. App. 2006).

A defendant who invokes his right to "effective assistance of counsel," while simultaneously rejecting "representation," is inherently speaking in contradictions. These contradictions demand a more thorough and accurate explanation of the defendant's Sixth Amendment right to counsel and further inquiry into the defendant's desire and competency to waive that right, including:

- an explanation of the right to representation by an attorney and the appointment of an attorney at no cost to the defendant if he cannot afford his own;

- an explanation of the charges and the possible penalties of conviction;

- inquiry into the defendant's competency to defend himself;

- inquiry into the defendant's understanding of his additional rights to remain silent, confront witnesses, cross-examine witness, and subpoena witnesses to testify on his behalf;

- explanation of the defendant's right to represent himself, combined with warnings of the dangers of self-representation; and

- direct questioning as to the defendant's desire to consult with an attorney about any of his rights or request the appointment of counsel.

*See Faretta*, 422 U.S. at 835–36; *Carnley*, 369 U.S. at 515–16. These inquiries did not happen here.

We recognize that Judge Dunn did warn Knight against some of the dangers of self-representation in January 2020:

> [Judge Dunn]: . . . Mr. Knight, you're representing yourself. Is that correct?
>
> [Knight]: I'm here as myself.
>
> [Judge Dunn]: Yes. And so you have not retained an attorney, nor have you applied for a public defender. Is that true?
>
> [Knight]: I can't afford an attorney. I've looked around and looked for attorneys, and the only one I can -- I feel confident in, I'm saving up money to get him.
>
> [Judge Dunn]: . . . Judges have an obligation when people represent themselves, particularly in criminal matters, to counsel them that it takes great skill

and understanding of the law and the rules to represent yourself in any -- any proceeding, particularly a criminal proceeding where your liberty's at stake.

And persons who represent themselves are not to be treated differently by judges. That is, I hold you to the same standard as I would if [a defense attorney] was sitting there next to you, that I'm going to expect that you are going to know and understand and follow all of the laws that apply and all the rules that apply to these proceedings, and I'm not going to cut you slack because you are a layperson, not a trained or experienced or educated attorney. I don't have any -- I shouldn't give you any kind of special benefit or privilege because of that. You understand that?

. . . .

. . . My concern is there'll be rules that apply to evidence and argument and those kind of things. You're going to have to comply with those. And you may say, "Well, I think this evidence should come in," and I may say, "Sorry, it doesn't come in, because under the rules it's not allowed." Those kind of things. And you are not going to know those one way or another.

That's why it's always better when a person is in this kind of proceeding that they are represented by an experienced attorney who understands the law and the rules and can represent them well. And that's all the advice I'm giving you, is that you must -- you're going to have to follow those rules and that law whether you have an attorney or not. Do you understand?

[Knight]: I'm saving money to afford an attorney.

[Judge Dunn]: Okay. Do you -- are your financial circumstances such that you could qualify for a public defender?

[Knight]: According to [the magistrate court] they're -- they won't qualify.

. . . .

He said I wouldn't qualify for --

[Judge Dunn]: Okay. Okay. Well, in the meantime, we have to proceed. I'm not going to delay the case, give you months to find an attorney or pay for an attorney. We have to proceed, and we're just going to go forward, and you're going to have to take whatever risks there are in representing yourself. You understand that?

[Knight]: I -- there's nothing I else I can do.

This colloquy demonstrates that, while Knight was informed of the dangers of self-representation, the district court did not explain to Knight that he had a binary choice to make. Either he could apply for a public defender and be appointed an attorney who would manage his defense, or he could represent himself. What the district court did not explain is that Knight did not have a right to the services of an attorney who would do "as little or as much" as Knight wanted. That is not how attorneys represent clients.

16

While attorneys certainly have ethical obligations to consult with their clients, attorneys are responsible for managing the case and making difficult strategic calls. Implicit in some of the exchanges with the district court is that Knight understood that a court-appointed attorney would manage the defense. It was also apparent that he did not want an attorney managing his defense. But at that juncture, the district court had to make it clear that Knight was not entitled to what he wanted—an attorney who would do "as much or as little" as he wanted. In other words, he was not entitled to invoke a right to counsel and yet call the shots at trial. The appointment of "shadow counsel" did not solve the dilemma that Knight's position created. The Chief Justice forcefully makes this point in his special concurrence.

While *Faretta* warnings "do not need to be given contemporaneously to the defendant's waiver[,]" they "must be given so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Dalrymple*, 144 Idaho 628, 634, 167 P.3d 765, 771 (2007) (internal quotation marks omitted) (quoting *Faretta*, 422 U.S. at 835). In other words, adequate *Faretta* warnings necessarily include a full inquiry on the record as to whether the criminal defendant understands he is electing to represent himself and understands the repercussions of that choice. No additional warnings were provided to Knight when he was appointed "shadow counsel," and the district court provided no further explanation of "shadow counsel's" role or Knight's status as a self-represented defendant until the post-trial hearing on Knight's motion for a new trial, *after* Knight had already been convicted. Most importantly, the district court never informed Knight that, by accepting the appointment of "shadow counsel," he was waiving his Sixth Amendment right to counsel. Accordingly, any warnings provided by Judge Dunn in January 2020 were inadequate to infer that Knight knowingly, intelligently, or voluntarily waived his Sixth Amendment right to counsel at trial.

We appreciate the difficulties both district judges had communicating with Knight in this case. Certainly, there is a point—after the trial court has made an adequate inquiry on the record of the defendant's understanding of his rights or provided adequate *Faretta* warnings—at which a trial court may make an express finding that a defendant has elected to represent himself based on his continued refusal to cooperate with the court regarding the appointment of counsel. *See People v. Arguello*, 772 P.2d 87, 95–97 (Colo. 1989) (*en banc*) (holding the defendant's "obstreperous and dilatory conduct" *could* amount to a voluntary waiver of his right to counsel but did not in that

17

case because the trial court did not inquire as to the defendant's understanding of what it means to proceed self-represented or his competency to do so).

To constitute a valid waiver of a defendant's Sixth Amendment right to counsel, the trial court must conduct a specific inquiry on the record to ensure the defendant understood: (1) the binary choice between self-representation and representation by an attorney; (2) the risks of self-representation as it pertains to the charge and possible consequences of conviction; and (3) that misconduct and repeated rejection of a court-appointed attorney may result in a waiver of the right to counsel. Ultimately, the record in this case indicates that Knight never understood that he was faced with a binary choice between his right to counsel on the one hand—meaning representation by an attorney—and waiver of that right on the other. He mistakenly believed that his acceptance of "shadow counsel" was an invocation of his Sixth Amendment right to counsel. Accordingly, we conclude Knight did not validly waive his Sixth Amendment right to counsel at trial.

While the above analysis resolves the Sixth Amendment issue as raised by Knight on appeal, we take this opportunity to address an additional issue we identified in the record regarding how Knight's right to counsel was handled before the magistrate court, particularly during the preliminary hearing. The United States Supreme Court has made clear that a Sixth Amendment right to counsel exists outside the trial itself, attaching "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *see also* I.C. § 19-852(1)(a) (2017) ("An indigent person who is . . . under formal charge of having committed, or is being detained under a conviction of, a serious crime is entitled: (a) To be represented by an attorney to the same extent as a person having his own counsel is so entitled . . . .") (redesignated as I.C. § 19-6001(1)(a) (2023)). Thus, the right to counsel also exists "at the time of a preliminary hearing." *Kirby*, 406 U.S. at 688–89. Here, it is apparent that Knight did not have counsel at his preliminary hearing despite informing the magistrate court that he wanted, but could not afford, counsel:

> [Magistrate court]:  We're set for set for a preliminary hearing today. Mr. Knight is present. You're going to represent yourself?
>
> [Knight]:  I stated the last two times that I want a counsel, but I can't afford one.
>
> [Magistrate court]:  All right. Now, and you – and you haven't applied for, and as we discussed last time, you likely don't qualify for a court-appointed

attorney. So state's represented by [prosecuting attorney]. [Prosecuting attorney], are you prepared and ready proceed?

[Prosecuting attorney]: I am, your Honor.

From this colloquy, it is clear that the magistrate court proceeded with Knight's preliminary hearing, and ultimately bound Knight over to the district court on the charges, while Knight was unrepresented and without first providing Knight with an advisement of his Sixth Amendment right to have counsel represent him at *that* hearing *and* all subsequent proceedings.

We recognize that Knight did not hire his own private attorney, and we acknowledge that the right to a court-appointed attorney at public expense applies only to a criminal defendant who is indigent. *State v. Daly*, 161 Idaho 925, 928, 393 P.3d 585, 588 (2017); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *see also* I.C. §§ 19-6009(1)(a); 19-6011(redesignated from 19-854 by Idaho Sess. Laws. 2023, ch. 220, § 7, eff. July 1, 2024). During Knight's arraignment, and again at Knight's preliminary hearing, the magistrate court strongly suggested that Knight would not qualify for a court-appointed attorney because he was working at the time, thereby implying that Knight was not indigent. But a defendant's employment status does not indicate whether a criminal defendant is, or is not, indigent. Section 19-6011(2)(a) thorough (c) of the Idaho Code provides a presumption of indigency if a criminal defendant falls into any of the following categories:

> (a) Persons whose current monthly income does not exceed one hundred eighty-seven percent (187%) of the federal poverty guidelines issued annually by the federal department of health and human services;
>
> (b) Persons who receive, or whose dependents receive, public assistance pursuant to title 56, Idaho Code, in the form of food assistance, health coverage, cash assistance or child care assistance; or
>
> (c) Persons who are currently serving a sentence in a correctional facility or are being housed in a mental health facility.

I.C. § 19-6011(2)(a)–(c). However, the above categories are non-exhaustive, and a court may consider additional factors to determine indigency, including: "income, property owned, outstanding obligations, the number and ages of his dependents and the cost of bail. Participation in the Idaho health insurance exchange shall not result in the presumption of indigency." I.C. § 19-6011(3). The record does not contain any information regarding Knight's income, assets, or financial obligations. Accordingly, any suggestion that Knight was not entitled to a court-appointed attorney was premature and, thus, improper until Knight had been given an opportunity to apply for a public defender and provide the court with the full information it needed to conduct

an indigency determination. When Knight indicated he wanted counsel but could "not afford one," the magistrate court should have stayed the preliminary hearing until it had made an indigency determination, provided Knight with adequate *Faretta* warnings, and provided a full inquiry on the record as to whether Knight was knowingly, intelligently, and voluntarily waiving his right to counsel.

In sum, we hold that the record does not show that Knight knowingly, intelligently, or voluntarily waived his Sixth Amendment right to counsel at any point during the criminal proceedings because he was not provided adequate *Faretta* warnings. Accordingly, the judgment of conviction is vacated. Because Knight appeared without counsel throughout the pretrial proceedings, this also implicates his motion to suppress. Thus, on remand, Knight may, if he so desires, refile his motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, we vacate Knight's judgment of conviction and remand this case for further proceedings that are consistent with this opinion.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.


BEVAN, Chief Justice, specially concurring.

I concur in the majority's opinion and fully agree that Knight's convictions must be vacated. I write separately to highlight an issue that this case brings to light: the difficulty for trial courts in managing issues like the one at bar, and the need for those courts to exercise proactive case management from the outset to prevent outcomes like this one. Trial courts have both the authority and the responsibility to actively manage proceedings when a defendant's conduct hampers the right to counsel and frustrates the determination of whether that right has been waived.

The Court today thoroughly explains why Knight never validly waived his Sixth Amendment right to counsel under *Faretta v. California*, 422 U.S. 806, 835 (1975). Knight repeatedly demanded "assistance of counsel" but refused actual representation and rejected the idea of an attorney speaking for him, necessitating a more direct inquiry than what happened here. When a trial judge chooses to appoint standby counsel for a pro se defendant, that judge takes on a management challenge that is potentially fraught with hazards like this case presents. My goal in writing today is to emphasize what this management problem requires from trial judges.

20

The circumstances of this case also illustrate a broader principle. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the *Assistance of Counsel* for his defence.

U.S. CONST. AMEND. VI (emphasis added). But this constitutional provision does not include a *right* to standby or hybrid counsel. Indeed, as the Court's opinion today recognizes, "Knight did not have a right to the services of an attorney who would do 'as little or as much' as Knight wanted." *Ante* at 17. *See also State v. Averett*, 142 Idaho 879, 886, 136 P.3d 350, 357 (Ct. App. 2006) ("[T]he appointment of standby counsel is discretionary and not a matter of constitutional right."). As the U.S. Supreme Court explained in *McKaskle v. Wiggins*, there is no constitutional right to a hybrid arrangement in which the defendant selectively accepts some of counsel's services while retaining control of all strategic decisions. 465 U.S. 168, 183 (1984). The Sixth Amendment guarantees representation by counsel. *Faretta* recognizes a criminal defendant's right to represent himself. But the Sixth Amendment does not guarantee an intermediate option.

Other courts have reached the same conclusion, recognizing that "there is no constitutional right to hybrid representation." *State v. Hackett*, 164 Ohio St.3d 74, 78 (Ohio 2020); *see also Phillips v. State*, 604 S.W.2d 904, 907 (Tex. Crim. App. 1979) ("no constitutional right to hybrid representation of partially pro se and partially by counsel"); *Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993) ("If there is no constitutional requirement to permit hybrid representation at trial, there is, a fortiori, no constitutional right to hybrid representation on appeal…").

Federal circuits likewise reject any right to a "mix-and-match" form of representation. *See, e.g.*, *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir.1998) ("[the defendant] was constitutionally guaranteed the right to represent himself if he so chose, or to receive competent representation from an attorney, but the availability of standby counsel to provide a combination of the two was not constitutionally required"); *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir.1998). These authorities reinforce the point that when a defendant like Knight demands a form of standby counsel while simultaneously rejecting representation, the court must require the defendant to choose between counsel or self-representation, but not some combination of the two.

Trial judges must recognize that the appointment of standby counsel is simply part of allowing a criminally charged defendant to represent himself. In such situations, the pro se

21

defendant is in charge of all decisions and of handling all proceedings. The defendant may call on standby counsel to conduct parts of the trial, or to merely act as a confidant or advisor. That is up to the defendant. But appointing standby counsel does not create some type of "no man's land" between full representation and self-representation. It is self-representation. It must therefore include a full *Faretta* inquiry to justify allowing the defendant to represent himself, even if he is also given the benefit of standby counsel.

When a defendant's statements are equivocal or evasive, like Knight's were here, the trial court cannot simply continue forward in ambiguity; the court must insure there is no ambiguity and emphasize that the defendant has a binary choice to make.

Trial courts are vested with the inherent authority to maintain the orderly administration of justice. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). Trial courts can and should take reasonable steps to ensure a defendant understands the *two* available choices under *Faretta*, i.e. a criminal defendant has the right to counsel *or* the right to self-representation, but not the right to both. When a trial court chooses, in its discretion, to appoint standby counsel, care must be taken to insure that such counsel does not usurp the defendant's right to act as his own counsel *See McKaskle*, 465 U.S. at 178 (emphasis in original) ("If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.").

This case also illustrates that a defendant's conduct can, in some circumstances, result in an implied or functional waiver of the right to counsel, provided the court first gives clear warnings about the consequences of continued non-cooperation. Several jurisdictions recognize that a defendant may waive counsel through dilatory or obstructive behavior after adequate warnings. *See, e.g.*, *State v. Clay*, 11 S.W.3d 706, 713 (Mo. Ct. App. 1999) (concluding that an indigent defendant who refuses to cooperate with appointed counsel and insists he wants a different appointed counsel has impliedly, not expressly, waived his right to counsel); *People v. Arguello*, 772 P.2d 87, 93 (Colo. 1989) ("A waiver may take the form of an express statement by the accused relinquishing the right to counsel, or under certain circumstances, a waiver can be implied from the facts of the case."). Courts distinguish this form of waiver from forfeiture, which can occur when a defendant's serious misconduct is aimed at thwarting the proceedings. *See State v. Hampton*, 92 P.3d 871, 874 (Ariz. 2004) (explaining that the court must "both warn[] the defendant

that further disruptive conduct may result in the loss of the right to counsel and explain[] the implications of such a waiver."); *United States v. McLeod*, 53 F.3d 322, 325–26 (11th Cir. 1995) (distinguishing between "waiver" and "forfeiture," the Eleventh Circuit held that a defendant's abusive conduct toward his attorney could result in the forfeiture of the right to counsel.); *United States v. Allen*, 895 F.2d 1577 (10th Cir.1990) (district court properly treated defendant's dilatory conduct as a request to proceed pro se).

These cases underscore the broader point: the trial court *must* take an active role in clarifying expectations when a defendant persistently refuses to give a straight answer about the right to be represented by counsel. In my view, trial courts can and should pause the proceeding, clarify the binary choice between representation and self-representation, and document on the record that the defendant understands that no third option exists. *See Faretta*, 422 U.S. at 835 (waiver must be made "with eyes open"); *State v. Meyers*, 164 Idaho 620, 623–24, 434 P.3d 224, 227–28 (2019) (request to proceed pro se must be clear and unequivocal). Doing so not only protects the defendant's constitutional rights; it also prevents the kind of protracted confusion that occurred here.

It is difficult to fault the district judges here. Knight presented as a defendant whose statements were often confusing and inconsistent, making it difficult to determine what he actually intended. However, it is those difficulties that demonstrate why trial courts must actively manage these cases; they must sometimes intervene and always make explicit findings to ensure that any purported waiver of counsel rests on a genuine choice, rather than a misunderstanding.

I therefore join the majority's opinion in full, and I add these observations only to provide additional guidance to trial courts facing similar challenges.